The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with modifications of Finding of Fact #10, Conclusions of Law #6 and #7.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at all relevant times.
2. With respect to I.C. File No. 245808, Pennsylvania National Insurance Company was the carrier on the risk on March 12, 1992, which is the date of the alleged injury giving rise to this claim.
3. At the time of the March 12, 1992 injury, the plaintiff's average weekly wage was $274.47 yielding a compensation rate of $182.99.
4. With respect to I. C. File No. 424732, the defendant was a duly qualified self-insured with Key Risk Management Services, Inc., as the servicing agent on January 24, 1993, which is the date of the alleged injury giving rise to this claim.
5. At the time of the January 24, 1993 injury, the plaintiff's average weekly wage was $301.07, yielding a compensation rate of $200.73.
6. The issues for determination are:
 a. Whether the plaintiff sustained a compensable injury on March 12, 1992 which resulted in injuries to her left arm, left leg, back and neck;
 b. Whether the plaintiff sustained a compensable injury on January 24, 1993 which resulted in injuries to her right hip, right elbow, and right hand;
c. To what benefits may plaintiff be entitled; and
 d. Whether the plaintiff is entitled to attorney's fees and costs as a result of defendants' failure to comply with I.C. Rule 601.
7. Following the hearing, the depositions of James U. Adelman, M.D., Albert K. Bartko, M.D., Bradley J. Buxton, D.C., Don C. Chaplin, M.D., Lane Jackon, P.T., Robert Owen Madtes, P.T., and C. Keith Willis, M.D. were received into evidence. The objections raised therein are ruled upon in accordance with the law and this Opinion and Award.
8. The parties stipulated Forms 22, consisting of four pages, medical reports, consisting of one hundred and six pages, vocational reports, consisting of ninety-nine pages, and Commission forms, consisting of thirteen pages, into the record.
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
* * * * * * * * * * *
FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a thirty-six year old high school graduate who began working for defendant-employer on August 14, 1989 as a machine operator. The plaintiff was promoted to quality control lead person, where she trained machine operators, checked machine parts and labels, kept the floor swept, checked dryers, and documented machine problems. These duties required plaintiff to walk, bend, sit, stand, lift weights up to thirty-five pounds, and to climb up seven to eight feet in height in order to get on top of the machines.
2. On March 12, 1992, the plaintiff walked to the corrugated area and slipped on some oil on the floor. Her feet slipped out from under her and she fell on her buttocks, landing on the concrete floor.
3. As a result of the fall on March 12, 1992, the plaintiff experienced left arm and leg pain and felt a tingling sensation up her spine. Two weeks later, the plaintiff experienced symptoms of a stiff neck and migraine-type headaches.
4. The plaintiff reported the incident to Richard Bogart, production manager for defendant-employer, who prepared an accident report.
5. The plaintiff continued to work after this incident, and did not seek medical treatment until May 28, 1992, at which time she went to chiropractic physician Bradley Buxton. The plaintiff treated with chiropractor Buxton for thirty-eight visits and was released from his care on September 14, 1992 with no rating of permanent partial impairment.
6. On November 12, 1992, the plaintiff was referred by the carrier to Dr. Ronald Gioffre, an orthopedist, for evaluation. Dr. Gioffre found plaintiff to have a normal range of motion in the neck, no neck spasms, normal upper thoracic spine, normal clavicle and shoulders, muscle testing and sensory exam of upper extremities were intact, upper reflexes were intact. Dr. Gioffre felt that plaintiff could continue her full work activities and did not retain any permanent partial disability.
7. Next, on January 24, 1993, the plaintiff climbed up on a machine to fill the color. The plaintiff's foot slipped, and she fell to the cement floor, landing on her right elbow, arm and hip. Mr. Bogart was called at home to report the injury, and he instructed plaintiff to go to a doctor. Thereafter, on January 25, 1993, the plaintiff was seen at Urgent Medical Care.
8. The plaintiff was placed on light duty work for three days, and returned to regular duty on February 1, 1993.
9. On March 17, 1993, the plaintiff was referred to Dr. Willis by defendant-carrier Pennsylvania National Insurance Company for an independent medical evaluation. The plaintiff related a history of the 1992 fall at work following which she experienced low back and neck stiffness and headaches. Dr. Willis diagnosed the plaintiff with cervical sprain syndrome.
10. Dr. Willis opined that based upon the history plaintiff related to him of the 1992 injury, he related plaintiff's headaches to the 1992 fall and not to the January 24, 1993 fall. Dr. Willis opined that plaintiff retained a five percent permanent partial impairment based upon her subjective complaints of pain, and found plaintiff capable of lifting up to thirty pounds frequently and thirty-five pounds occasionally. However, Dr. Willis did not determine plaintiff's permanency rating according to the Commission's Rating Guide.
11. On August 5, 1993, the plaintiff's employment was terminated by defendant due to her insubordination and substandard training of employees under her charge.
12. The plaintiff has sought work since her termination and has sought assistance from the local North Carolina Vocational Rehabilitation Office for vocational counseling.
13. The plaintiff was paid unemployment compensation from October 27, 1993 through February 16, 1994.
14. On October 19, 1993, Dr. Willis referred plaintiff to Dr. Robert Madtes, a neurologist. The plaintiff related a history of the 1992 fall and of headaches. Stretching, strengthening, and range of motion exercises were ordered. On December 28, 1993, Dr. Madtes assessed the plaintiff as having a full cervical and trunk range of motion, a twenty-five pound floor to waist lifting on a repetitive basis, increased overall muscle strength, less pain frequency and intensity, and decreased headache frequency were noted.
15. Dr. Willis felt that the March 12, 1992 injury possibly could have caused the strain syndrome and that it was possible that the January 24, 1993 injury exacerbated the condition.
16. On December 6 and 13, 1993, the plaintiff was referred by the carrier to Dr. I. Robinson Hicks, an orthopedist. At that time, plaintiff participated in a Pentothal Pain Study which indicated that her pain was nonphysiogenic. Dr. Hicks found plaintiff to be at maximum medical improvement, concluded that no further treatment or therapy were indicated, and found her capable of performing work.
17. On November 25, 1994, the plaintiff was referred to Dr. Albert Bartko, a psychiatrist, by North Carolina Vocational Rehabilitation. The plaintiff related a history of both the 1992 and 1993 falls. Dr. Bartko diagnosed the plaintiff as having cervical and lumbosacral myofascial pain, and a functional capacity evaluation was ordered.
18. Dr. Bartko opined that the plaintiff's knee complaints were not caused or aggravated by the work-related injuries. Further, he stated that the 1993 fall may have exacerbated the problems which arose after the 1992 fall, but that the symptoms complained of arose from the first fall.
19. On June 9, 1995, the plaintiff was seen by neuropsychiatrist Dr. James Adelman, who diagnosed the plaintiff with headaches, left occipital trigeminal vascular syndrome with possible brachial involvement, post traumatic; and myofascial cervical, shoulder, thoracic and lumbosacral pain, post traumatic.
20. Dr. Adelman has opined that the 1992 fall could have caused plaintiff's problems with headaches and that the 1993 fall may possibly have exacerbated the headaches. Further, he opined that the plaintiff was not at maximum medical improvement with regard to the headaches.
21. The defendant-carrier and the third party administrator did not enter into Agreements accepting these claims, but treated the claims as "medical only" files, since plaintiff lost no time from work.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on March 12, 1992. N.C. Gen. Stat. § 97-2 (6).
2. As a result of the compensable injury on March 12, 1992, the plaintiff missed no time from work. Therefore, she is not entitled to temporary total disability benefits. N.C. Gen. Stat. § 97-28.
3. As a result of the compensable March 12, 1992 injury, the plaintiff is entitled to have defendant-carrier Pennsylvania National Insurance Company pay medical expenses incurred, including treatment by Chiropractor Buxton and Dr. Gioffre.
4. The plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on January 24, 1993. N.C. Gen. Stat. § 97-2 (6).
5. As a result of the compensable injury on January 24, 1993, the plaintiff missed no time from work. Therefore, she is not entitled to temporary total disability benefits. N.C. Gen. Stat. § 97-28.
6. As a result of the compensable January 24, 1993 injury, the plaintiff is entitled to have defendant-employer as self-insured to pay medical expenses related to the injury, including treatment by Dr. Hicks, Dr. Willis, Dr. Chaplin, and Dr. Madtes.
7. The plaintiff has failed to carry the burden of proof to establish that her incapacity to earn wages is due to either the 1992 or 1993 injuries. More than mere possibility of causation must be shown. The plaintiff has offered merely speculative evidence as to causation, and has relied on conjecture based upon incomplete medical histories to physicians to support her contention. Therefore, defendants are not required to pay medical expenses for treatment by Dr. Adelman and Dr. Bartko.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claim for additional benefits is, and under the law must be, DENIED.
2. Defendants shall pay medical expenses incurred, in accordance with this Opinion and Award.
3. Defendants shall pay the costs to the extent not already paid, including the following expert witness fees:
$100.00 to Robert Owen Madtes, P.T.;
$180.00 to Albert K. Bartko, M.D.;
$105.00 to Bradley Buxton, D.C.;
$195.00 to C. Keith Willis, M.D.;
$180.00 to James U. Adelman, M.D.;
$175.00 to Don C. Chaplin, M.D.; and
$100.00 to Lane Jackson, P.T.
 S/ ______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING AND DISSENTING IN PART:
S/ _______________________ COY M. VANCE COMMISSIONER
DCS:bjp